UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

PHILLIP YATES,

           Plaintiff,

    -vs-

A. CUNNINGHAM, et al.,

           Defendants.

**DECISION AND ORDER**

**No. 08-CV-6346(MAT)**

---

## I. Introduction

Proceeding pro se, plaintiff Phillip Yates ("Yates" or "Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983, alleging that defendants Arlyn Cunningham, J. Edgar Emerson, Jr., Derek Blumbergs and Loren James violated his constitutional rights in connection with his arrest for driving while intoxicated on February 5, 2006, and his subsequent detention in the Yates County Jail. Presently pending is Defendants' motion for summary judgment dismissing the second amended complaint on the basis that it is untimely and, in the alternative, fails to state any colorable claim upon which relief may be granted. Plaintiff has opposed the motion, asserting that he is entitled to tolling of the statute of limitations due to his "insanity."

This matter was transferred to the undersigned on January 18, 2013. For the reasons that follow, Defendants' motion for summary judgment is granted, and the second amended complaint is dismissed in its entirety.

**II. Procedural Background**

Plaintiff commenced this action by filing a complaint on August 4, 2008 (Dkt #1), in which he asserted that the County of Yates and other defendants imposed an allegedly unlawful "federal common law lien" on his property in 1994, and subjected him to "trumped up" criminal charges that resulted in a felony conviction. In an Order dated February 2, 2009, the Court (Siragusa, D.J.) directed Plaintiff to file an amended complaint to correct certain deficiencies.

After seeking four extensions, Plaintiff finally filed his first amended complaint on September 21, 2009 (Dkt #14), for the first time mentioning the alleged constitutional violations stemming from his February 5, 2006 arrest for drunk driving and subsequent detention at the county jail. As the Court (Siragusa, D.J.) noted, the facts presented, the parties sued, and the challenged conduct in the first amended complaint bore little resemblance to the original complaint. Judge Siragusa expressed serious reservations concerning the timeliness of the claims asserted in the first amended complaint, since they were wholly unrelated to the claims in the original complaint. As noted, the claims in the first amended complaint, filed on September 21, 2009, related to injuries that allegedly occurred in February and March 2006. Therefore, they appeared to be untimely under the three-year statute of limitations applicable to § 1983 actions.

Accordingly, Plaintiff was directed to file a second amended complaint in which he was required to adduce facts to establish he is entitled to tolling of the applicable three-year limitations period. Plaintiff requested and received one extension of time in which to submit his second amended complaint, which was filed on November 20, 2009 (Dkt #18).

In their motion for summary judgment (Dkt ##116, 126), Defendants argue the second amended complaint, which pertains to alleged constitutional violations occurring in February 2006,[1] and March 2006, is untimely and must be dismissed on that basis. Defendants assert that it is "law of the case" that the allegations in Plaintiff's first amended complaint, and, by extension, Plaintiff's second amended complaint, do not relate back to filing of the original complaint. Defendants' Memorandum of Law ("Defts' Mem.") at 4 (citing Dkt #14, at n. 3) (Dkt #134) ("Plaintiff filed his original complaint in this action on August 4, 2008 but did not raise the alleged February 5, 2006 physical assault claim in his initial complaint. The physical assault claim, therefore, does not relate back to the original filing pursuant to Rule 15(c) of the

---

[1] In the second amended complaint, Plaintiff asserts that (1) when he was arrested for driving while intoxicated, the arresting officer used excessive force and exhibited deliberate indifference to his serious medical needs by refusing to take him to "detox" rather than jail; (2) the police officers utilized excessive force during the booking process; and (3) he did not receive adequate medical care while he was a pre-trial detainee at the Yates County Jail.

Federal Rules of Civil Procedure."). After reviewing Judge iragusa's October 13, 2009 order, along with the applicable case law, the Court agrees that the relation-back issue was decided adversely to Yates. The threshold question, therefore, is whether Yates has sufficiently established that he is entitled to equitable tolling of the statute of limitations.

**III. Tolling**

It is well-established that claims brought under 42 U.S.C. § 1983 are subject to the applicable state law in the jurisdiction in which they are commenced. Owens v. Okure, 488 U.S. 235, 251 (1989). Plaintiff's claims against the County defendants derive from the Fifth Amendment's due process clause, as made applicable to the states via the Fourteenth Amendment.[2] In the context of § 1983 actions, the statute of limitations for such claims is three years. See Jewell v. County of Nassau, 917 F.2d 738, 740 (2d Cir.

---

[2] "[A] person detained prior to conviction receives protection against mistreatment at the hands of prison officials under the Due Process Clause of the Fifth Amendment if the pretrial detainee is held in federal custody, or the Due Process Clause of the Fourteenth Amendment if held in state custody." Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009) (comparing Cuoco v. Moritsugu, 222 F.3d 99, 106 (2d Cir. 2000) (applying Fifth Amendment to a federal detainee), with Liscio v. Warren, 901 F.2d 274, 275-76 (2d Cir. 1990) (applying Fourteenth Amendment to a state detainee)); finding in Caiozzo that the district court correctly concluded that a claim for indifference to the medical needs of the plaintiff, as a pretrial detainee in state custody, was properly brought under the Due Process Clause of the Fourteenth Amendment); see also Johnston v. Maha, 606 F.3d 39, 41 (2d Cir. 2010).

1990) ("This Court has held that New York's three year statute of limitations under N.Y. CIV. PRAC. L. & R. 214(2) (McKinney 1990) governs § 1983 actions brought in federal district court in New York.") (citation omitted). A cause of action under § 1983 accrues when the plaintiff knows or should know of the injury that is the basis of the cause of action. Morse v. University of Vt., 973 F.2d 122, 125 (2d Cir. 1992) (citation omitted). In determining when the statute begins to run, "the proper focus is on the time of the [illegal] act, not the point at which the consequences of the act become painful." Chardon v. Fernandez, 454 U.S. 6, 8 (1981) (per curiam).

In this case, Plaintiff's claims all stem from his arrest for driving while intoxicated ("DWI") in Yates County on February 5, 2006; the subsequent booking process on February 5, 2006; and his pre-trial detention at the Yates County Jail from February 5, 2006, through March 3, 2006. In order for Plaintiff to assert all of his claims in a timely manner, he was required to commence this action on or before February 5, 2009, at the latest. However, the first time that Plaintiff mentioned any of these claims was in his first amended complaint, filed on September 21, 2009 (Dkt #13). Based solely on the filing date, the first amended complaint is untimely by over six months.

In order for Plaintiff to avoid dismissal, he must establish that he is entitled to have the limitations period tolled. See

Jewell v. County of Nassau, 917 F.2d 738, 740 (2d Cir. 1990) ("Federal courts do have the power to toll statutes of limitations borrowed from state law . . . .") (citing, inter alia, Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 465 (1975)). New York has codified the circumstances under which limitations may be tolled as follows: tolling where the action is stayed by court order or by statute, see New York Civil Practice Law and Rules ("C.P.L.R.") § 204(a); tolling where a defendant is outside New York when a claim accrues against him, see C.P.L.R. § 207; tolling for infancy and insanity, see C.P.L.R. § 208. Plaintiff here argues that he is entitled to have the statute tolled by reason of insanity.

C.P.L.R. § 208 provides in relevant part as follows:

> If a person entitled to commence an action is under a disability because of . . . insanity at the time the cause of action accrues, and the time otherwise limited for commencing the action is three years or more and expires no later than three years after the disability ceases, or the person under the disability dies, the time within which the action must be commenced shall be extended to three years after the disability ceases or the person under the disability dies, whichever event first occurs; if the time otherwise limited is less than three years, the time shall be extended by the period of disability. . . .

N.Y. CIV. PRAC. L. & R. § 208. The New York Court of Appeals has explained that the tolling provisions in the C.P.L.R. "should not readily be given an expansive interpretation tending to undermine the basic purposes behind the Statutes of Limitation[,]" and, in

-6-

particular, "the legislative history of [C.P.L.R. §] 208 indicates that the Legislature intended the toll for insanity to be narrowly interpreted." McCarthy v. Volkswagen of Am., 55 N.Y.2d 543, 548 (1982). Notably, the Advisory Committee on Practice and Procedure rejected the possibility of substituting the phrase "mental illness" for the term "insanity" out of "fear that this change might result in unwarranted extensions of the time within which to commence an action[.]" Id. (citation omitted). The New York Court of Appeals has interpreted C.P.L.R. § 208's tolling for "insanity" to encompass "only those individuals who are unable to protect their legal rights because of an over-all inability to function in society." Id. (holding that plaintiff who was capable of managing his general business and social affairs and who successfully entered college some seven months after accident and, in suit against him by passenger in vehicle, asserted a third-party complaint less than 14 months after accident, could not assert the toll of statute of limitations for the disability of insanity upon claim that he had suffered from "post traumatic neurosis" assertedly rendering him incapable of confronting the memory of his accident).

"In order to be afforded the benefit of the tolling provision, the burden is upon the plaintiff to establish [his] insanity." Graboi v. Kibel, 432 F. Supp. 572, 580 (S.D.N.Y. 1977). "It is only the presence of an overall inability to function which is *actually*

-7-

*attributable to a mental rather than a physical condition* which may properly serve as the predicate for application of the insanity toll[.]" McBride v. County of Westchester, 211 A.D.2d 792, 794 (2d Dept. 1995) (citing Eisenbach v. Metropolitan Transp. Auth., 468 N.E.2d 293 (N.Y. 1984) (tolling statute of limitations for insanity does not include temporary effects of medications administered in treatment of physical injuries); emphasis supplied). The test for determining "insanity" for purposes of C.P.L.R. § 208 "depends less on the proper medical classification of the state of the claimant's mental health (normal, neurotic, psychotic or, . . . , 'borderline'), and more on a matter of pragmatic assessment of whether the claimant can manage his or her personal affairs[.]" McBride, 211 A.D.2d at 794 (citing McCarthy, 55 N.Y.2d 548).

Plaintiff here asserts that he "suffers from a chronic mental disorder in which he has suffered from [sic] throughout his lifetime[,]" in particular, "Schizophrenia, Major Depressive, as well as Adjustment Disorder with Depressed Mood, Bipolar Disorder in addition to Panic Disorder[.]" Plaintiff's Affidavit in Opposition to Defendants' Motion for Summary Judgment ("Pl's Aff."), ¶¶ 6, 7 (Dkt #154). Plaintiff cites his "Psychiatric Records" which he has attached as Exhibit A to his affidavit. Many of these documents are not medical or psychiatric records at all, but instead are narrative reports regarding the "Psychiatric/Legal Status" of Plaintiff, completed by Johnnie Walker, a "Social

Worker, Entitlement/Mental Health Specialist and Court Advocate" in connection with Plaintiff's application for Social Security benefits. Pl's Aff., Ex. A. The reports completed by Mr. Walker do not note any of the above-referenced psychiatric diagnoses.

Plaintiff also has included the 2002 report of Dr. Drew J. Arnold, Ph.D., a licensed psychologist, completed a Psychological Assessment of Plaintiff at the request of the public defender representing Plaintiff in connection with a DWI arrest. From a cognitive standpoint, Plaintiff's skills were in the low normal to higher borderline range of functioning. Importantly, Dr. Arnold noted that Plaintiff's self-reported information "was neither consistently corroborated by records and observations nor internally consistent." Pl's Ex. A (Dkt #154). For instance, although Plaintiff complained of experiencing auditory command hallucinations, the available records did not note such complaints during previous intake evaluations for mental health treatment.

Dr. Arnold administered the Minnesota Multiphasic Personal Inventory test and found that the results were "most consistent with th[ose] of individuals who are, to some degree, exaggerating their symptoms and problems for purposes of secondary gain." Id. (Dkt #154). Essentially, Plaintiff was inflating or over-endorsing his experiences of psychopathology but was not actually displaying symptoms of such psychopathology during the interview. Dr. Arnold found that, in sum, "gross indicators or psychotic processing were

not evident[,]" and Plaintiff was not currently experiencing symptoms of anxiety, an anxiety-based disorder, or a psychotic disorder. Id. (Dkt #154). Dr. Arnold found that diagnoses of substance abuse disorders and personality disorder, not otherwise specified (with antisocial traits) would appropriately characterize his overall functioning.

Although Plaintiff has experienced chronic patterns of personal and social maladjustment throughout his life, he has been able to function independently in society. For instance, Plaintiff testified that just prior to his arrest on February 5, 2005, he was able to take his children to the school bus stop, drive his car, care for his pets, and manage his money. He testified that during the period at issue (February 5, 2006, to September 21, 2006), he was able to do the same activities as he could do prior to the arrest, including taking his children to the bus stop. To the extent he was limited in these activities, it was due to physical symptoms from, e.g., his diabetes, and not because of his mental health. Plaintiff was able to self-inject his diabetes medication, monitor his own blood sugar levels, and follow-up with his doctors regarding his medications.

Plaintiff also was capable of protecting his own legal interests. For instance, on February 6, 2006, at 8:41 p.m., while incarcerated at the Yates County Jail, Plaintiff telephoned his mother and was overheard saying that he had been "out all night

drinking" and had "got[ten] busted in Penn Yan." Declaration of Charles Swanekamp, Esq. ("Swanekamp Decl."), Ex. C (Dkt #116-1).

Shortly after being released from jail on bond, Plaintiff was arrested again on April 6, 2006, and charged with aggravated unlicensed operation of a motor vehicle in the second degree. While being arraigned in town court, Plaintiff stated, in regards to his February 2006 DWI arrest, "I have a high priced attorney out of Rochester to fight that. . . . I was on medication." Cunningham Aff., Ex. H; Swanekamp Decl., Ex. F.

During an appointment at the Rushville Health Center on March 30, 2006, Plaintiff told his doctor that his "lawyer says he won't be able to get all his meds in jail unless the Dr [sic] writes a letter." Swanekamp Decl., Ex. E.

On April 21, 2006, Plaintiff was brought to the hospital by a sheriff's deputy and treated for extreme intoxication; his blood-alcohol content was 0.32 at the time of his admission. Once he became sober, he met with a nurse for a mental health evaluation, during which he stated, "I got drunk. I fell in a ditch, my friend found me and took me home. My mom called the police because I threw a chair." Swanekamp Decl., Ex. G. Plaintiff also commented, "I have some hot shot lawyer from Rochester, cost me $7,000." Id.

On May 9, 2006, Plaintiff again visited Rushville Health Center. He made the observation to staff members that he was "grossly overweight" and did not know what to do about it.

Swanekamp Decl., Ex. E. Several weeks later, on May 23, 2006, Plaintiff recognized that he might be suffering from a respiratory infection, noting, "I may need an antibiotic . . . . I've been coughing up crap." Id. In fact, during May 2006, Plaintiff personally called the Rushville Health Center several times regarding various health issues. Id. On July 26, 2006, Plaintiff expressed a concern to his doctor that he might have contracted a sexually transmitted disease from his ex-wife after having had recent contact with her. Id.

"Although the condition of an individual's mental capabilities is largely a factual question," Graboi v. Kibel, 432 F. Supp. at 578, the toll claimed by Plaintiff here is untenable as a matter of law, id. On the present record, Plaintiff cannot establish that he was continuously unable, throughout the relevant time-period, to protect his rights due to an overall inability to function in society actually attributable to a psychological disorder. Because Plaintiff is not entitled to the insanity toll contemplated by C.P.L.R. § 208, his § 1983 claims are barred by the applicable statute of limitations.

**IV. The Americans With Disabilities Act and Rehabilitation Act Claims**

Plaintiff generally asserts in the second amended complaint that he was denied medical care by Yates County officials in contravention of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12102, et seq., and the Rehabilitation Act, 5 U.S.C.

-12-

§ 790, et seq. Title II of the ADA "proscribes discrimination against the disabled in access to public services." Powell v. National Bd. of Med. Exam'rs, 364 F.3d 79, 84-85 (2d Cir.), corrected, 511 F.3d 238 (2d Cir. 2004). It provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; see also Harris v. Mills, 572 F.3d 66, 73 (2d Cir. 2009) (citation omitted). Likewise, the Rehabilitation Act requires that certain "otherwise qualified" disabled individuals receive reasonable accommodations from programs receiving federal financial assistance. 29 U.S.C. § 794(a); Harris, 572 F.3d at (citations omitted).

In order for Yates to establish a prima facie violation under the ADA and the Rehabilitation Act, he must demonstrate (1) that he is a qualified individual with a disability; (2) that the Defendants are subject to one of the statutes; and (3) that he was denied the opportunity to participate in or benefit from Defendants' services, programs, or activities, or was otherwise discriminated against by Defendants, by reason of his disability. Harris, 572 F.3d at 73-74 (citation omitted).

Relying on district court cases from this Circuit and Henrietta D. v. Bloomberg, 331 F.3d 261 (2d Cir. 2003), 541 U.S.

936 (2004), Defendants argue that neither statute provides a private right of action against individual defendants. However, in Harris v. Mills, the Second Circuit held that district courts have incorrectly relied upon Henrietta D. to find that claims under Title II of the ADA and the Rehabilitation Act cannot be asserted against individuals in their official capacity. 572 F.3d at 72 ("Title II and Rehabilitation Act suits for prospective injunctive relief may, under the doctrine established by Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), proceed against individual officers in their official capacity[.] . . . Insofar as the amended complaint seeks prospective injunctive relief, then, it may be asserted against the individual defendants here in their official capacities.") (citation and footnote omitted).

Here, the Court (Siragusa, D.J.) has held that the only remaining defendants in this action are individuals, i.e., Cunningham, Emerson, Bulmbergs and James. See Dkt #19. In addition, Plaintiff seeks redress under the ADA and Rehabilitation Act solely with regard to past wrongs, namely, Defendants' failure to have Plaintiff "detoxed from the mountains of incapacitating drugs," Dkt #18 at 5, ¶ 23 (capitals omitted), and to provide other medical care. Because prospective injunctive relief is not an objective of Plaintiff's lawsuit, he cannot state a claim under the ADA or the Rehabilitation Act against the individual defendants here in their official capacities. The Court further finds as a matter of law

that Plaintiff has wholly failed to make out a prima facie case under either the ADA or the Rehabilitation Act.

**V. The First Amendment Claims**

In his second amended complaint, Plaintiff mentions the First Amendment once, in the first paragraph. "[F]actual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 540 U.S. 544, 556 (2007) (requiring plaintiff to plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [his claim]").

There are no allegations whatsoever relating to the alleged First Amendment violation, and a mere passing reference to a constitutional amendment is plainly insufficient to state a claim upon which relief may be granted. See Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting Twomblv, 555 U.S. at 570).

**VI. Conclusion**

For the foregoing reasons , Defendants' motion for summary judgment (Dkt ## 116, 126) is granted, and the second amended complaint (Dkt #18) is dismissed in its entirety. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from

this order would not be taken in good faith. The Clerk of the Court is directed to close the case.

**SO ORDERED.**

                                            S/Michael A. Telesca

                                      HONORABLE MICHAEL A. TELESCA
                                      United States District Judge

DATED:     February 12, 2013
             Rochester, New York